**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| SONOMEDICA, INC., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|   vs. | )   Case No. 1:08cv230 |
| | ) |
| SAILOR H. MOHLER | ) |
| 5410 Lightning View Road | ) |
| Columbia, Maryland 21045 | ) |
| | ) |
| And | ) |
| | ) |
| SAILOR C. MOHLER | ) |
| 4000 Wexford Drive | ) |
| Kensington, Maryland 20985 | ) |
| | ) |
|     **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SHOW CAUSE
AGAINST KERRY POINDEXTER FOR FAILURE TO COMPLY WITH
SUBPOENA *DUCES TECUM* AND FOR PERJURY DURING HIS DEPOSITION**

Plaintiff, SonoMedica, Inc., by counsel, has requested that this Court enter an Order requiring Kerry Poindexter to show cause why he should not be held in contempt for failure to abide by a lawfully issued and served subpoena *duces tecum*, and for committing perjury during his deposition. In addition, plaintiff has asked this Court to enter an Order permitting SonoMedica to re-depose Mr. Poindexter and to have a forensic inspection of any personal or business computers he has used from in or about October 1, 2007 through the present for documents sought, but not produced, by the subpoena *duces tecum,* all at Mr. Poindexter's expense.  In support of this Motion Plaintiff states as follows:

**FACTS:**

On July 30, 2008, this Court, per Magistrate Judge Jones, found that a prima facie showing had been made by plaintiff regarding the application of the crime- fraud exception to the attorney-client and attorney work privilege doctrines and ordered that documents be produced to plaintiff, SonoMedica, from the file of attorney Jeffrey Pritzker regarding the transaction between Sailor H. Mohler and Passive Diagnostics. (Docket No. 101)[1]. Based on the documents produced from Pritzker's file, and additional documents obtained by plaintiff, SonoMedica brings this Motion to Show Cause regarding Kerry Poindexter.

In support of the earlier Motion to Compel the Production of documents from attorney Pritzker, plaintiff filed extensive memoranda with a notebook full of supporting exhibits. (Docket Nos. 72-73).  In pursuing the instant Motion to Show Cause against Kerry Poindexter, plaintiff intends to rely upon the previously filed memoranda and exhibits, but in the interests of not over- burdening the court, plaintiff is not resubmitting those pleadings, unless the court directs otherwise.

The earlier Motion to Compel (Pritzker) set out for the Court the evidence that plaintiff has uncovered regarding the concerted effort of the defendants, along with several of their associates, (including Mr. Poindexter) to mislead the plaintiff (and the Court) regarding the facts underlying this case.  (Docket Nos. 72-73, 98).

The defendants efforts, thus far, have been to acknowledge that defendant Sailor H. Mohler entered into a sales agreement with an off shore company, Passive Diagnostics

---

[1] This refers to the docket number on the electronic docket sheet at the U.S.D.C. for the Eastern District of Virginia.

Inc., to sell and disclose certain property, including intellectual property, which SonoMedica claims is its' property and trade secrets, but to argue that nothing occurred **before** December 18, 2007 when SonoMedica allegedly fired Sailor H. Mohler. In the aforementioned Motion to Compel (Pritzker), SonoMedica set forth for the court how Sailor H. Mohler, Sailor C. Mohler, James Cullen and Kerry Poindexter all testified at their depositions that all efforts regarding the December 26, 2007 sales agreement between Sailor H. Mohler and Passive Diagnostics took place **after** December 18, 2007. SonoMedica also set forth for the court why that testimony was false and misleading, and provided the court with extensive documentation showing that, at a minimum, the genesis of the sales agreement was actually in mid-October 2007, when Kerry Poindexter contacted Fred Eichelberger and James Cullen and told them that Sailor H. Mohler was looking to sell the "SonoMedica" technology, which he stated was now Mohler's. On November 5, 2007, Eichelberger sent an e-mail to his attorney, J. Calvin Jenkins, and asked that he "quietly" work out a deal between Eichelberger's off shore company, Passive Diagnostics, and Mohler, through Mohler's attorney, Jeffrey Pritzker. According to the privilege log provided by Mr. Jenkins, and a subsequent document production by Mr. Jenkins, as well as the belated production of Mr. Pritzker's file, it is now clear that throughout the months of November and December, 2007, negotiations and arrangements were made for Mohler to sell the "SonoMedica" property to Passive Diagnostics.

It was also learned that Mr. Mohler had created, in writing, a plan to sell the technology to the off shore companies while still posing as a loyal SonoMedica employee so that he would have access to the intellectual property being generated by several studies being conducted by SonoMedica. As noted, Mohler put his intended scheme in

writing, and in fact called it "The Plan". See Exhibit 1. Furthermore, Mohler sent the plan to his attorney, Pritzker, through his associate, Kerry Poindexter, so that Mr. Pritzker could utilize the plan when crafting the agreement with the off shore company. See Exhibit 1. Mr. Mohler testified that he knew Mr. Pritzker had reviewed a copy of that document[2], yet the document was never produced in discovery by the defendants. Nor was it produced by Pritzker pursuant to the subpoena to him. Plaintiff received a copy of the document from Kerry Poindexter on or about June 27, 2008, only **after** Poindexter's deposition had concluded on June 23, 2008.

Although Poindexter provided some additional documentation on June 27, it is clear from subsequent productions from Pritzker and attorney Jenkins, that Poindexter has **not produced** other documents that are germane to this action and which were sought pursuant to the June 3 subpoena *duces tecum* served on Poindexter. It is also abundantly clear that when he was finally deposed[3], Poindexter, in numerous ways, misled plaintiff during his deposition on important issues, such as the date when he first sought investors for Mohler (claiming it was after December 18, 2007), and the finder's fee arrangement with Sailor H. Mohler, as well as Poindexter's arrangement with Fred Eichelberger and Passive Diagnostics regarding his being paid by Passive Diagnostics, among other issues.

1. **Contrary to His Deposition Testimony, The Evidence Is Clear That Poindexter Assisted Mohler With the Passive Diagnostics Transaction Long Before December 18.**

    a. **Poindexter's Deposition Testimony**:

---

[2] See Exhibit 2, Sailor H. Mohler Deposition Excerpts at 376.

[3] Poindexter initially appeared by himself for his deposition on June 12, but the matter was put over until June 23 when Poindexter appeared with his counsel, Jeffrey Pritzker, the same person who represented Sailor H. Mohler in his transaction with Passive Diagnostics, Inc.

–4–

Just as the Mohlers and some of their other associates have claimed throughout discovery, Kerry Poindexter, another associate of the Mohlers, testified at his June 23 deposition that he first learned that Sailor H. Mohler wanted to sell the technology to Passive Diagnostics Inc. **after Sailor H. Mohler's employment was terminated.** While he did not know the exact date of when he learned of the termination, he believed it to be late December, 2007.  See Exhibit 3, Kerry Poindexter Deposition Excerpts.  For instance, Poindexter testified under oath as follows:

> Q. And when we the first time you knew that he was interested in selling technology to Passive Diagnostics Inc?
> A. Oh, I believe it was around December 18th, I think, he was terminated.  (43)

\*          \*          \*          \*          \*          \*

> A. The only thing he said to me is find him an investor.
> Q. An investor in what?
> A. An investor for him to raise money for some of his spin-off corporations. (47)

\*          \*          \*          \*          \*          \*

> Q. … In October or November 2007, did you have any conversation with Sailor Mohler where he informed you that he want to sell certain technology… to sell the technology for the CardioSond?
> A. In November or October?
> Q.  October of '07.
> A. I can't—no, Mike. Again I mean I had several conversations with Sailor Mohler and his son. … And I never really heard between October and November of '07 if he wanted to sell anything--- maybe wanted to borrow money. But sell anything, no…. (48)

\*          \*          \*          \*          \*

> Q. In October or November, did you ever contact Fred Eichelberger to inform him that Mr. Mohler was interested in selling the CardioSond device or the technology related to the CardioSond?
> A. No….
> Q.  So, I'll ask you again. Do you have any recollection in October or November of 2007 of calling Mr. Eichelberger and informing him that Mr. Mohler wanted to sell the technology that is known as the CardioSond technology---
> A.  No
> Q.  or anything like that?
> A.  No.
> Q.  Do you recall having a conversation with Mr. Eichelberger similar to that at

>     some later date?
>     A. Similar to it at a later date, that's correct.
>     Q. Tell me about that conversation at a later date.
>     A.... I believe it was around December. All this commenced after Sailor Mohler got fired.
>     Q. All right
>     A.  And that's December the 18th. And I believe that the conversations that was had with Eichelberger has been an issue ever since after December.  (49-50).[4]

\*          \*          \*          \*          \*

>     Q. What was the first time that you knew of a connection between Senior wanting to sell the property to Passive Diagnostics, Inc.?
>     A. I believe it was probably in December. Maybe, second, third week of December.
>     Q. And how did you become aware that he wanted to sell the property to Passive Diagnostics, Inc.
>     A. Through Sailor.
>     Q. …what were the circumstances?
>     A. .. He said he was terminated. He said according to his employment agreement, that he was terminated, that the technology reverted back to him…
>     ……    He told me to find a potential investors.
>     Q. … And what did you do?
>     A.  I went and found—looking for potential investors.
>     Q. And did you find any?
>     A. Yes. I found potential investors…
>     Q. Who is that?
>     A. It was Fred Eichelberger and James Cullen.  (73-75.)

\*          \*          \*          \*          \*

>     Q.  So if I understand what you're telling me is sometime after Mr. Senior is terminated by SonoMedica, he asked you to find potential investors so that he could sell what had been the SonoMedica property, because it now reverted back to him.
>     And you contacted Mr. Eichelberger and asked him if he was interested in purchasing that technology, is that correct?
>     A.  That's correct.  (77)

\*          \*          \*          \*          \*

>     Q.  Again, if I understand your testimony, the first you knew that he was attempting to sell the technology to PDI—to Passive Diagnostics or Fred Eichelberger or James Cullen was after he was terminated. Is that correct?

---

[4] Poindexter acknowledged that he did try to raise money prior to Mohler's firing, but it was always investment money for SonoMedica, not Mohler personally. Exhibit 3, (Poindexter Dep. at 70-71).

   A.  To my understanding, it was after he was terminated…. (93)[5]

\*   \*   \*   \*   \*   \*

   A.  …I think there was some negotiations before the contract was executed.
   Q.  And were those negotiations ---
   A.  Discussions.
   Q—before or after he was terminated by SonoMedica?
   A.  I believe—I believe after.  I believe it was after, Mike. (97)

\*   \*   \*   \*   \*   \*

See Exhibit 3.

  **b.  The Real Facts: Poindexter Was Involved in this Transaction Long Before December 18, 2007.**

  1. Fred Eichelberger testified that he was contacted by Kerry Poindexter in mid-October, 2007, and asked if he was interested in purchasing the "SonoMedica" technology directly from Sailor H. Mohler. See Exhibit 4 (Eichelberger Deposition Excerpts at 65). See also Exhibit 5, (October 17, 2007 Email, SCMohler to Poindexter); Exhibit 6, (October 19, 2007 Emails, SH Mohler to Poindexter and then Poindexter to Eichelberger); Exhibit 7 (October 25, 2007 email from Poindexter to Eichelberger regarding Poindexter, Mohler and Pritzker meeting). On November 5, 2007, Fred Eichelberger sent an e-mail to his attorney, Mr. Jenkins, and the formation of the contract/agreement of sale between Passive Diagnostics and Sailor H. Mohler began.  See Exhibit 8.

  2. The final agreement of sale between Sailor H. Mohler and Passive Diagnostics provided by the defendants to SonoMedica is dated December 26, 2007. However, on July 30, 2008, defendants' present counsel provided plaintiff's counsel with an email dated **December 10, 2007** that contained a signed copy of page 8 of an agreement of sale by **Sailor H. Mohler**.  This signed document was sent by e-mail at

---

[5] See also: Exhibit 3, Poindexter Dep. at 99-100: (first heard of PD purchasing anything from Mohler after he was terminated).

3:11 pm by Kerry Poindexter to another Mohler associate, Jeffrey Litman, for forwarding to attorney Jeffrey Pritzker. See Exhibit 9[6]. In his cover e-mail to attorney Pritzker, Litman states: "this signed agreement should keep the ball rolling. Assume you will get a copy to their atty so he can see your changes. Thanks…" This document had <u>never</u> been produced by defendants in discovery, had never been produced by Poindexter pursuant to the subpoena to him, nor was it produced by Pritzker pursuant to the May 29, 2008 subpoena to him, until July 30, 2008. Unquestionably, this document proves that Poindexter knew there was an agreement with Mohler prior to Mohler's purported termination on December 18.

3. Additionally, it is now clear that Poindexter was receiving inside information from Sailor C. Mohler regarding SonoMedica as early as October 17, 2007[7], and that Poindexter was forwarding that inside information to Fred Eichelberger. See Exhibit 5 (email regarding information about NYU Study).

4. It is also clear that around the same time, on October 19, 2007, Sailor H. Mohler sent **draft** documents from SonoMedica's Board of Directors to Poindexter noting that "things are heating up and moving on!!!!". Poindexter promptly sent the email and the inside documents to the off shore company, The Kingston Group, through Eichelberger. See Exhibit 6.

5. It is now clear that on December 7, 2007, Sailor H. Mohler sent Poindexter a copy of Mohler's "plan" to undermine SonoMedica and personally profit

---

[6] Jeffrey Litman's involvement in the Passive Diagnostics deal was not previously known.
[7] Actually, an email exists from Sailor C. Mohler to Poindexter dated March 30, 2007 regarding information that had been distributed to the SonoMedica Board. See Exhibit 10.

from a side deal with The Kingston Group from the work he performed at SonoMedica, and in this email he asked Poindexter to send the information to attorney Pritzker to incorporate in the "framework" of the agreement Pritzker was formulating for Mohler with the off shore company. See Exhibit 1.

6. Moreover, when attorney Pritzker's file was finally turned over to the plaintiff, it was learned that a finder's fee agreement, dated **December 17, 2007**, had been entered into by Overflow Properties, signed by Poindexter's wife, Valerie, and counter signed by defendant Sailor H. Mohler. See discussion infra at 9-10. The agreement wholly contradicted the sworn deposition testimony of Kerry Poindexter.

7. On August 4, 2008, plaintiff's counsel received additional documentation from attorney Jenkins including a March 4, 2008 letter from attorney Pritzker (representing Mohler) to attorney Jenkins (representing Eichelberger/Passive Diagnostics) regarding a "Passive Diagnostics, USA Inc. Distributorship Agreement" for Kerry Poindexter. This document was never produced pursuant to either the earlier subpoenas to Pritzker and to Poindexter. See Exhibit 12.

Based on the above, clearly, Poindexter's deposition testimony regarding the date of his involvement in the Passive Diagnostics-Mohler sales agreement was not truthful. Moreover, it is clear that Poindexter did not provide all of the documentation sought by the subpoena *duces tecum* served on him.

2. **Contrary to His Deposition Testimony, The Evidence Is Clear That Poindexter's Wife, On Behalf of Overflow Properties, Actually Entered into A Finder's Fee Agreement with Sailor H. Mohler on December 17, 2007.**

As noted in the Motion to Show Cause (Overflow Properties/ Valerie Poindexter) filed this date, it is now clear that Kerry Poindexter did not testify truthfully regarding the

finder's fee agreement, claiming that his wife had nothing to do with any of these transactions, when in fact his wife had signed the Finder's Fee Agreement with Sailor H. Mohler on December 17, 2007.  Of course, the date of the agreement demonstrates the untruthfulness of the claim that there were no efforts to reach any agreement between Sailor H. Mohler and Passive Diagnostics until **after** Sailor H. Mohler was purportedly fired on December 18, 2007.  See Exhibit 3 (Kerry Poindexter Deposition Excerpts).

3. **Contrary to His Deposition Testimony, The Evidence Just Received From Attorney Jenkins Indicates That Poindexter Had Reached An Agreement With Passive Diagnostics Regarding His Own Finder's Fee and Salary Arrangements And Poindexter Had Documentation Regarding Such An Arrangement That He Never Provided to Plaintiff.**

On August 4, SonoMedica received for the first time a March 4, 2008 letter from attorney Jeffrey Pritzker to attorney J. Calvin Jenkins, with an attached draft Distributorship Agreement between Passive Diagnostics, USA and Kerry Poindexter. See Exhibit 12.  The Distributorship Agreement clearly falls within the scope of the documents that Poindexter was required to bring with him to his deposition. See Exhibit 13. Yet it was not produced by him, even after his deposition when attorney Pritzker forwarded documents from Poindexter to SonoMedica's counsel.

Moreover, in his deposition, Poindexter testified that he had not reached any agreements with Eichelberger or Passive Diagnostics although he acknowledged there had been some discussion about his distributing the CardioSond device.  However, according to the cover letter by attorney Pritzker, Poindexter actually believed otherwise. The letter states:

> Additionally, your client [Passive Diagnostic] has offered Kerry a position in the company, a substantial commission for bringing the matter to closing, and other benefits to be discussed. Kerry advises that he had discussed with your client a

> $250,000 finders fee if the matter was brought to closing, and he has requested that I confirm that with your client, through your good offices. Kerry also tells me that the position discussed, although unnamed, was to provide a $15,000 a month base salary plus benefits, We also ask that you confirm this with your client…

See Exhibit 12. Poindexter's deposition testimony never revealed this understanding, and in fact, he indicated to the contrary, that there was no finders fee arrangement with Eichelberger/Passive Diagnostics. See Exhibit 3 (Poindexter Deposition at 145, 190-192).

**CONCLUSION**

Since Poindexter's deposition, SonoMedica has been able to retrieve several critical documents that should have been produced by Poindexter, including (a) a finder's fee agreement by Poindexter's wife and Sailor H. Mohler (produced from Pritzker's file); (b) a December 10 email from Poindexter to Litman attaching a copy of a signed agreement by Sailor H. Mohler for forwarding to attorney Pritzker (produced from Pritzker's file) and (c) a draft Distributorship Agreement (which was produced from Jenkins files). All of these documents, as well as many others, demonstrate that Poindexter did not testify truthfully at his June 23 deposition and also the non production of these important documents raise the question, **what else has not been produced?**

Plaintiff, SonoMedica, requests this Court to allow it to finally get those answers. Accordingly, SonoMedica requests that this Court enter an Order requiring Kerry Poindexter to show cause why he should not be held in contempt for failure to abide by a lawfully issued and served subpoena *duces tecum*, and for committing perjury during his deposition and in addition, plaintiff asks this Court to enter an Order permitting SonoMedica to re-depose Mr. Poindexter and to have a forensic inspection performed on

any personal or business computers that Poindexter has used from in or about October 1, 2007 through the present for documents sought, but not produced, by the subpoena *duces Tecum*, at Poindexter's expense.

>Respectfully submitted,
>
>SonoMedica, Inc.
>By Counsel

_____/s/_____
Michael S. Lieberman
Virginia State Bar No. 20035
*Attorney for Plaintiff, SonoMedica, Inc.*
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
(703) 684-4333
(703) 548-3181 (Fax)
mlieberman@dimuro.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August 2008, a true and accurate copy of the foregoing was sent via electronic mail using the court's CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Tameka M. Collier, Esquire
>Troutman Sanders, LLP
>401 9th Street, N.W.
>Washington DC 20004-2134
>Tel/Fax 202-274-2856
>202-654-5620
>
>Stephen C. Piepgras, Esquire
>William H. Hurd, Esquire
>Ashely L. Taylor, Jr. Esquire
>Troutman Sanders, LLP
>1001 Haxall Point
>Richmond, VA 23219
>804-697-1335
>804-698-6058 (Fax)
>stephen.piepgrass@troutmansanders.com
>william.hurd@troutmansanders.com
>ashley.taylor@troutmansanders.com
>*Counsel for Defendants*

And by U.S. mail, first class postage prepaid and by email to:

>Jeffrey N. Pritzker, Esquire
>Margolis, Pritzker, Epstein & Blatt, P.A.
>West Road Corporate Center
>110 West Road, Suite 222
>Towson, Maryland 21204
>410-823-2222
>410-337-0098 (Fax)
>jnpritzker@mpelaw.com

>_____/s/_____
>Michael S. Lieberman
>Virginia State Bar No. 20035
>*Attorney for Plaintiff, SonoMedica, Inc.*
>DiMuroGinsberg, P.C.
>908 King Street, Suite 200
>Alexandria, VA 22314
>(703) 684-4333
>(703) 548-3181 (Fax)
>mlieberman@dimuro.com