**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SONOMEDICA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 1:08cv230 |
| ) | |
| **SAILOR H. MOHLER** ) | |
| And ) | |
| **SAILOR C. MOHLER** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR IMPOSITION OF SANCTIONS AGAINST
THIRD PARTY WITNESS JAMES CULLEN**

*"The best defense is a good offense"*

Perhaps taking a page from heavyweight champion Jack Dempsey's playbook,[1] Cullen defends against SonoMedica's Motion for Sanctions by claiming that the motion is "vindictive,"(p.15) "against public policy," (p. 5) "using the court as a pawn," (p. 5) "misstates the court's September 12 ruling," (p. 8) "beating a dead horse," (p. 8) and the amount sought is "exorbitant."(p. 12).[2] Switching tactics, Cullen concludes his Opposition by stating that he is "a 67-year old retiree with no source of income" and that if sanctions were awarded, the "end result is likely to be Bankruptcy." (p.15).

Before addressing Cullen's offensive tactics, SonoMedica would like to first approach the facts.

PROCEDURAL FACTS

---

[1] http://wiki.answers.com/Q/Who_said_the_best_offense_is_a_good_defense
[2] Cullen's opposition also claims that SonoMedica "gilds the lilly" (p. 9) and seems to somehow question SonoMedica and its counsel's "credibility" (page 14).

1

James Cullen and his associates entered into a transaction to purchase intellectual property belonging to SonoMedica. When served with a subpoena *duces tecum* to produce a wide variety of documents pertaining to that transaction and the activities of the purchaser, (an off-shore company set up by Cullen known as Passive Diagnostics Inc. "PDI") Cullen disregarded the subpoena. When summoned to a deposition to truthfully testify regarding the transaction and the activities of PDI, he testified falsely and misled SonoMedica. Up until the time that documents were finally retrieved from his computer the extent of his misrepresentations and the activities of PDI in the spring and summer of 2008 were not fully known or appreciated by SonoMedica. See Discussion below.

Due to Mr. Cullen's failure to comply with the subpoena *duces tecum* and testify truthfully at his deposition, SonoMedica, through its counsel, were forced to expend unnecessary and substantial time chasing false leads obtained from Mr. Cullen's testimony[3], as well as tracking down the truth, which should have been forthcoming from Mr. Cullen.

On September 12, 2008, this Court held Mr. Cullen in contempt due to the above actions and provided him with an opportunity to purge the contempt by complying with the Court's further orders:

---

[3] While Cullen's opposition is correct in noting that SonoMedica intentionally conducted the deposition of Mr. Cullen first, it totally misses the mark when it states that "it begs credibility for Plaintiff to suggest that it would not have 'researched leads' from the deposition notwithstanding any contempt or further proceedings" (p. 14). Of course SonoMedica intended to research leads from Mr. Cullen's testimony--- counsel just expected to research actual leads and not false "ghost" leads or irrelevant leads as provided by Mr. Cullen, and as to those that actually were real leads, had SonoMedica been provided with accurate names of businesses and participants in the engineering of the Heartear machine by PDI, its counsel would not have wasted so many hours tracking down those businesses and participants. It is now clear that Mr. Cullen had invoices identifying each of these participants at his house, in chronological order, yet to this day he has still not produced those documents. See Exhibit 9, Sept. 23, 2008 Dep. Tr. at 151-152.

      1. by not touching the computer except to turn them off …and by bringing the computer to counsel for SonoMedica for a forensic examination;

      2. by producing any documents he had which were responsive to the subpoena *duces tecum;* and,

      3. by truthfully and completely testifying at a further deposition.

See Exhibit 2, Sept. 12, 2008 Tr. at 8-11. (In his opposition, Cullen claims that he complied with the Court's order. As discussed below, he did not.)

    Further, at the September 12 hearing, the Court ordered that Mr. Cullen pay for the cost of the forensic examination and the cost of his second deposition, and that other additional costs related to the motions would be dealt with at a later time. Exhibit 2, Tr. at 20.

    SonoMedica has now moved the Court to award it the costs of the forensic examination, the cost of the second deposition and additional costs that were incurred due to the actions and misconduct of Mr. Cullen.   In his Opposition, Mr. Cullen takes issue with the forensic costs as not being properly documented and the attorney fees and costs as being exorbitant, challenging the requested costs for the first deposition, the two contempt motions, some part of the post deposition investigation and the preparation costs related to the second deposition. The Opposition does not contain any affidavits or other evidence in support of its claims. Mr. Cullen's opposition is without merit.

**I.**    **Mr. Cullen Did Not Comply With This Court's September 12, 2008 Order**

    **a.**    **Turning off the Computer (four times)**

    First, Mr. Cullen did turn over his computer as ordered. Mr. Cullen did have his computer turned off as ordered.  The computer, however, was thereafter turned on four separate times. Mr. Cullen asserts that only he was ordered not to turn it on and he did not turn it on-- it must have

been his wife. A literal reading of the Court's order could support Mr. Cullen's contention that only he was ordered not to turn on the computer. SonoMedica has no evidence to prove he did. It certainly seems to SonoMedica that a natural concomitant to this Court's order was for him to inform his wife or any other person with access to the computer that it was to remain off until turned over to SonoMedica's counsel. Mr. Cullen clearly did not do so.[4]

### b. Mr. Cullen Did Not Produce Additional Documents As Ordered

In his Opposition, Cullen states that "[t]he bottom line is, Mr. Cullen searched through his records and did not find any documents that are responsive to the subpoena," (p. 11)[5], and that plaintiff's claim that he admitted to having such documents is incorrect because "unfortunately for Plaintiff, the testimony is not quite as unequivocal and clear as Plaintiff suggests." (p.10). Cullen then goes on to cite several "equivocal" responses to counsel's questions at the second deposition. For instance, in addressing records of PDI's purchase of equipment he stated: "I probably have some of it home," (Exhibit 9, Sept. 23, Dep. Tr. at 122). In addressing the expense sheets from Eichelberger related to PDI he stated: "I probably have them," (*Id.* at 138). And, in addressing invoices from Harrison Jett, a PDI participant's invoices, he stated: "I might [have them]," (*Id.* at 156).

Cullen conveniently fails to note several other colloguys where Cullen was clear that he did have these types of documents at this home, indeed he keeps them chronologically:

> Q. Do you keep copies of those invoices?
>
> A. Oh, yes….
>
> \*    \*    \*    \*    \*

---

[4] All he told his wife was to not delete anything because "there's nothing on there anyway. There's garbage stuff." Exhibit 9, Sept. 23 Dep. Tr. at 59.

[5] This bold statement is not supported by an affidavit or affirmative proof.

4

>Q. The invoices that you have at home, do you have them divided as to The EYE versus The Heartear or the ALD 3000 or are they all just put together?
>
>A. They're all put together chronologically.
>
>\*     \*     \*     \*     \*
>
>Q. But the checks that were written to Quinn Embedded is a Heartear event rather than the Eye? Was he involved at all with The Eye?
>
>A. I think most of his work is with The Heartear.
>
>Q. And, again, it says invoice—
>
>A. Oh, I'd have the invoice, yeah.
>
>There's Odin Feldman & Pittleman. You're welcome to the invoices.
>
>\*     \*     \*     \*     \*

(Exhibit 7, Sept. 23 Dep. Tr. at 151-152, 159).

Accordingly, Cullen clearly had some documents that should have been produced per this Court's order. The testimony also indicates that he "probably" (more likely than not) has additional documents that should have been produced per this Court's order. What is also clear is that despite this Court's order, and despite SonoMedica's counsel's specific request to Cullen's counsel in a letter dated September 16, 2008 that "I would like to give each of your clients until Monday, noon, to produce any additional documents covered by their subpoena *duces tecum* related to this matter" (Exhibit 6 to Motion for Sanctions), Cullen did nothing to retrieve these documents or his responses to counsel's questions would not have been "I probably have them" or "I might have them"--- he would know what he had and he should have produced them. Cullen did not comply with this Court's order.

Moreover, SonoMedica is not suggesting that Cullen should have gone on to his computer to retrieve those records. As pointed out in the Opposition, (p.8) that potentially would have violated the Court's order. The above records that should have been produced were hard copy records maintained at his house (in chronological order). However, it does seem ironic that Cullen would claim that he could not download a copy of the relevant records that were on his computer, yet somehow it was not in violation of the order for his wife to go on the computer four times over the September 12 weekend.

        **c.**        **Mr. Cullen Did Not Testify Fully and Truthfully At His Second Deposition**

As pointed out in the Motion for Sanctions, while Mr. Cullen was clearly more forthcoming in his second deposition than his first, SonoMedica still maintains that Mr. Cullen was less than truthful and clearly not fully forthcoming. See Motion at 13-15.

Among other things, (1) Mr. Cullen continued to refuse to acknowledge that Passive Diagnostics was incorporated in order to hold the IP obtained from Mohler (Exhibit 9, Sept 23 Tr. at 12-16)  just as he did in his first deposition (Exhibit 8. Tr. 9/23/08 at 14-17), although the documents found on his computer directly contradict this claim. (Letter stating that PDI "was incorporated in SVG to own and license certain patents and intellectual property related to the inexpensive diagnosis of coronary heart disease." See Exhibit 7, Cullen 130-133),[6] (2) Mr. Cullen continued to understate the marketing efforts that were being undertaken by PDI to sell the Heartear ("Fred hasn't told me anything that he's doing" "I don't know of any hospitals or

---

[6] The significance of this fact is that if PDI was incorporated in order to own and license the Cardiosond aka Heartear, then it is clear that the negotiations were taking place in early November 2007 when PDI was incorporated, which contradicts the testimony of the main defendant, Sailor H. Mohler and several other third party participants that no negotiations took place until December 18, 2007.

distributors or dealers, real or potential.")[7] (Exhibit 9, Sept. 23 Tr. 42-55) just as he did in his first deposition (Exhibit 8, Tr. 9/23/08 at 41-55, 86), although the documents found on his computer show that substantial efforts were being made to market the device and that Fred Eichelberger even provided Cullen with a Status Report on his efforts (Exhibit 7, at Cullen 265-268; 222, 311) and (3) he denied knowledge of any effort being made for Kerry Poindexter becoming a distributor for Passive Diagnostics ("first, I ever heard of it," "I am unaware of this")(Exhibit 9, Sept. 23, Tr. at 34-36), although documents were found on his computer showing a draft distribution agreement between PDI and Poindexter. (Exhibit 7, at Cullen 262-264).

## II. SonoMedica Is Not Seeking A Contempt Finding For Cullen For Not Pre-paying His Deposition Costs, And Cullen's Opposition Misstates The Content of Counsel's September 16, 2008 Letter

To clarify any misunderstanding, if there is one, SonoMedica is not seeking an additional finding of contempt against James Cullen for failing to prepay his deposition costs. Indeed, SonoMedica is not seeking an additional finding of contempt against James Cullen at all, although it clearly would be in the discretion of this Court to again find him in contempt. SonoMedica seeks to be repaid for its' out of pocket attorney fees and related costs caused by Mr. Cullen's contemptuous actions as well as any other relief that the Court deems proper. See Motion for Sanctions at 19.

After this Court ordered Cullen to pay for the second deposition and the cost of the forensic examination, SonoMedica requested that Cullen pay his fair share through a letter to his counsel. See Exhibit 6. In his Opposition, Cullen claims that SonoMedica sought payment for the **first deposition** in this letter. That is plainly incorrect as a review of the letter clearly shows.

---

[7] Later in his deposition, Cullen did recall that Tom Matte had been in touch with Johns Hopkins University. (Tr. at 86).

The comment in the letter to "all depositions" in item three refers to the anticipated depositions of the two Poindexters and Mr. Cullen, (all of whom were represented by Chester Banks) not any past depositions. That is why the letter discusses estimates of time and seeking payments "in advance" of the depositions. SonoMedica did not misstate this Court's September 12, 2008 ruling as alleged in the Opposition. (p. 8).

However, SonoMedica still contends that it would have been proper for Cullen to have paid his fair share, in advance, for the deposition costs and since he did not, those costs are now being sought by SonoMedica (and resisted by Cullen) in this Motion.

### III.     The Documents Found On Cullen's Computer Disclose that his False Testimony During the First Deposition Was Far Greater Than Previously Known

The documents found on Cullen's computer disclose that his false testimony during his first deposition was far more extensive than known. Of equal importance, the documents found on his computer were far more important and disclosed far greater efforts that were being made by PDI to engineer and market the Heartear than was known to SonoMedica even after its extensive investigation to get at the truth. The Status Reports, Project Updates and Report Log from Fred Eichelberger would have been of enormous importance to SonoMedica had Cullen produced them at the time of his subpoena *duces tecum* or at his deposition. See Exhibit 7, at Cullen118, 222, 265-268. The documents showing the relationship and proposed relationship sought by Kerry Poindexter from PDI also would have been of enormous importance to SonoMedica. See Exhibit 7 at Cullen 169-171, 199,262-264, 202. Finally, the ten page document composed by Sailor H. Mohler regarding the events underlying the lawsuit and the memoranda from Fred Eichelberger recapping telephone calls with members of SonoMedica were also of great importance and relevance to SonoMedica's efforts in this case. See Exhibit 7, at Cullen 201, 203, 273-282. The value of other documents that were found, such as Cullen 144 that

8

provided a different addresses for Eichelberger or the March 18, 2008 List of Upcoming Conferences and Conventions (*Id.* at Cullen 311) are unknown since they were produced late in the process and were could not be followed up.[8]

The Opposition claims that this is simply "beating a dead horse" (p.8) or "water under the bridge" (p. 9) since Mr. Cullen was held in contempt on September 12, 2008.  But, the issue is important because now it is crystal clear that Cullen's contemptuous actions were far more egregious than thought, and the consequences were extraordinarily costly to SonoMedica in pursuing its rights. At a minimum, Mr. Cullen's actions, now that the extent is known, should not be so easily purged by superficial and incorrect claims that he complied with this Court's subsequent orders.

**IV.     The Cost Sought By SonoMedica Should Be Awarded In Total**

    **a.     The forensic costs are properly substantiated.**

SonoMedica seeks $2,991.25 for its forensic examination of Cullen's computer. The costs are supported by exhibits 14 and 11.  The $2,991.25 is calculated very simply. Cullen's computer contained two hard drives. The first two line items on exhibit 14 are for the "forensic acquisition" of the two hard drives, at a cost of $1,000 each. The remaining $991.25 was for the obtaining of the documents from Cullen's computer and their being placed on a CD for SonoMedica's counsel's review. See Exhibit 14, Invoice #18673.  No additional reimbursement is being sought from Mr. Cullen. While Cullen is correct that the majority of the forensic costs were related to the Poindexters (over $12,000), none of that expense is being sought from Cullen.

---

[8] Similarly, whether or not the existence of the laptop computer has any value is unknown. See Exhibit 7 at Cullen 102-103.  However, Cullen did represent to the Court that he only has one computer, the desk top, although at his initial deposition he acknowledged having a laptop but said it was never used. Exhibit 8, 5/14/08 Tr. at 88).

9

### b. Attorney Fees Are Not Exorbitant

Had Mr. Cullen complied with the subpoena *duces tecum* and testified truthfully at his first deposition, not a dime of the attorney fees and costs incurred by SonoMedica would have been sought from Mr. Cullen. But he did not.

#### 1. The First Deposition.

All fees and costs attributed to the first deposition should be paid by Cullen. The deposition was not only a waste of time and money due to his contemptuous acts, it led to enormous expenses tracking down false leads, false information and the inability of counsel to properly prepare for and conduct the subsequent depositions in this case because of the information that was withheld from counsel. The Cullen deposition was so replete with false information that virtually every dime spent in preparing and conducting the deposition was a complete waste of time and resources.

#### 2. The Two Contempt Motions.

The Opposition memorandum calls the Motion to Show Cause, the Motion for Contempt (and response thereto) and this Motion for Sanctions: "two simple motions," and that "plaintiff is simply trying to recoup its litigation costs at the expense of a non-party witness." (p. 13). This argument is without merit and ignores the simple fact that each motion was necessitated because of the actions of Mr. Cullen. Moreover, each motion is fact intensive and required an enormous amount of time and resources to properly present to this Court. This Court has reviewed each of the motions, is very familiar with this case, and can properly assess the reasonableness and necessity of the work involved in presenting the motions to the Court.

### 3. Post Deposition Investigation

Claiming that plaintiff is merely seeking to recoup its litigation costs from Mr. Cullen (p. 13-14) the Opposition once again misses the point. The costs sought by SonoMedica are those it incurred because Mr. Cullen chose not to abide by a lawful subpoena *duces tecum* and to not testify truthfully at a critical time during this litigation, when the very future of SonoMedica's IP was at stake and the future course of the litigation was being determined. Instead of disclosing the nature and the history of the transaction with the Mohlers, and instead of disclosing the extensive engineering and marketing efforts that were **then** underway to get SonoMedica's device developed and sold by the off-shore company PDI, Mr. Cullen chose to hide the truth and force SonoMedica to undercover it through its own efforts, which were tedious, expensive and mostly avoidable had Mr. Cullen just not acted contemptuously by putting his own potential profit ahead of the rules of the Court. As noted earlier, Cullen's claim that a 1.5 hour effort to "research a lead" would have been done anyway is simply untrue. Many "leads" offered by Cullen were false and a waste of time to follow up on. Many claims by Cullen were false and had to be proven by obtaining hard documents, such as his role as a director of PDI by obtaining a page of the Article of Incorporation that he conveniently failed to provide to SonoMedica. While investigative efforts no doubt would have followed on the heals of Mr. Cullen's deposition, the one that was forced upon SonoMedica was marred with massive waste of effort and time in misdirected places rather than honed in at real evidence that should have been forthcoming from Mr. Cullen.

### 4. Second Deposition Costs

In his Opposition, Cullen claims that SonoMedica is seeking to "recover costs it would have incurred in any event", belittling SonoMedica for spending three hours in preparation for

Mr. Cullen's deposition by reviewing documents, claiming "this was work [that] was required no matter how Mr. Cullen conducted himself or when the deposition took place." (p. 14). Again, Cullen misses the point. The deposition would not have to have taken place at all had Cullen just told the truth the first time, and moreover, without documentation tying down every point during the deposition, Cullen no doubt would have been free to slide by once again with his "I can't recall" approach, which was overused during the second deposition in any event.

### 5. Additional Costs Should Be Considered By the Court

In addition to the fees and costs submitted with the Motion for Sanctions, SonoMedica would ask this Court to consider awarding additional fees for the three weeks in a row that Counsel has appeared before the Court in this matter (first on Mr. Banks motion to withdraw, then on Mr. Allen's motion to enter an appearance instead of arguing the motion, and finally this week's appearance to finally argue the motion), as well as the time counsel has expended in responding to Mr. Cullen's Opposition. SonoMedica estimates that a total of a minimum of 6 additional hours (at $350 an hour) has been so expended.

## V. The Other Tangential Claims By Cullen Are Meritless

### a. SonoMedica's Settlement Agreement With the Mohlers Is Irrelevant

Cullen claims that because the settlement agreement with the Mohlers contain an attorney fees provision that recognizes that SonoMedica intended to seek sanctions from Mr. Cullen and others and that if SonoMedica failed to obtain these sanctions the Mohlers would be responsible for those attorney fees incurred by SonoMedica, that somehow this is against public policy, is barratry and is using the court as a pawn. (p. 5). These claims are nonsense.

The attorney fees provision with the Mohlers merely recognize that in settling with the Mohlers that they (the Mohlers) should be responsible for the attorney fees and costs incurred by

12

SonoMedica in this litigation. However, because SonoMedica intended to proceed against Mr. Cullen and others for sanctions due to their contemptuous behavior, it was felt that it was unfair to seek those attorney fees from the Mohlers to the extent that SonoMedica was successful in obtaining the sanctions.

As reflected in the earlier proceedings in this matter, SonoMedica **always** intended to proceed against Mr. Cullen and the others who were held in contempt to obtain sanctions and recompensation for their contemptuous actions. See Exhibit 2, Sept. 12, 2008 Hearing Transcript. To the extent SonoMedica is successful in obtaining recompensation through sanctions, then the Mohlers should not be responsible for repaying SonoMedica those sums. If, on the other hand, SonoMedica is not successful in seeking recompensation, then the Mohlers should make SonoMedica whole by repaying it for these other fees and costs. All SonoMedica seeks is to be made whole because of the actions of others that have been incurred through this litigation. There is nothing improper or against public policy in such an arrangement and clearly, Cullen has not pointed to any.

Moreover, Cullen has not explained why he should not pay for the fees and costs incurred by SonoMedica due to his own contemptuous acts. If the Court agrees that the fees and costs sought by this Motion for Sanctions were caused by and should be paid by Cullen, then Cullen should pay the sanctions. Any contingent arrangement with the Mohlers about the payment of SonoMedica's attorney fees that are not recovered as sanctions is irrelevant, although it is important for the Court to understand that under no circumstances will SonoMedica receive any double recovery.

  **b.**  **Mr. Cullen's Age and Threat of Bankruptcy Is Irrelevant**

The only relevance of Mr. Cullen's age is that by that age he surely should have known better than to have taken the course of action he chose to take.

Similarly, a claim of bankruptcy[9] is not relevant to this proceeding and in any event such a claim is not supported by any evidence or by an affidavit. It is ironic, however, that the person who was more or less the money man for PDI would now claim to have no funds after participating in the payment of approximately $100,000 to Sailor Mohler, $20-25,000 to Odin, Feldman & Pittleman to represent Sailor Mohler, $25,000 to Troutman Sanders to represent Sailor Mohler, an unknown amount of funds to Chester Banks, Quentin R. Corrie and now Mr. Allen to represent him in these proceedings, and after he and his associates paid tens of thousands of dollars through Mr. Cullen's LLC's (P-4 and Mariread) to finance the engineering, development and marketing of the Heartear, all of this since November, 2007.[10]

**Conclusion**

For the foregoing reasons, SonoMedica's Motion for Sanctions should be granted in its entirety.

                                            Respectfully submitted,

                                            SonoMedica, Inc.
                                            By Counsel

_/s/_____
Michael Lieberman, Esquire
VSB #20035
Counsel for SonoMedica, Inc.
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
(703) 684-4333
(703) 548-3181 (Fax)
mlieberman@dimuro.com

---

[9] It is questionable whether sanctions under these circumstances are dischargeable in any event.
[10] Additional sums (approximately $10,000) were paid by Mr. Cullen's partner Fred Eichelberger to finance Mr. Poindexter's lawsuit against SonoMedica, although Mr. Cullen claims not to have knowledge of that.

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 17th day of September 2009, a true and accurate copy of the foregoing was sent via electronic mail using the court's CM/ECF system, which will send a notification of such filing (NEF) to the following:

    James A. Allen, Esq. VSB #35798
    Chong Park, Esq. VSB #45733
    CLARK & ALLEN, P.C.
    Market Station
    108-E South Street, S.E.
    Leesburg, VA 20175
    (703) 443-0001 telephone
    (703) 443-1081 facsimile
    jallen@candalaw.com
    *Counsel for James Cullen*

    Tameka M. Collier, Esquire
    Troutman Sanders, LLP
    401 9th Street, N.W.
    Washington DC 20004-2134
    Tel/Fax 202-274-2856
    202-654-5620

    Stephen C. Piepgras, Esquire
    William H. Hurd, Esquire
    Ashely L. Taylor, Jr. Esquire
    Troutman Sanders, LLP
    1001 Haxall Point
    Richmond, VA 23219
    804-697-1335
    804-698-6058 (Fax)
    stephen.piepgrass@troutmansanders.com
    william.hurd@troutmansanders.com
    ashley.taylor@troutmansanders.com
    *Counsel for Defendants*

          _____/s/_____
          Michael S. Lieberman
          Virginia State Bar No. 120035
          *Attorney for Plaintiff, SonoMedica, Inc.*
          DiMuroGinsberg, P.C.
          908 King Street, Suite 200
          Alexandria, VA 22314
          (703) 684-4333
          (703) 548-3181 (Fax)
          mlieberman@dimuro.com